JOHN F. MURPHY *vs.* FRANK P. DUFFY, Town Treas. *et al.*

APRIL 2, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

SWEETLAND, C. J. The above entitled cause is a suit in equity in which the complainant, a taxpayer of the town of West Warwick, seeks to restrain the respondent Frank P. Duffy, town treasurer of said town, from paying any of the money of said town to the respondent John F. McCusker on account of a contract between said McCusker and a committee, appointed by a special town meeting of said town to provide two new schoolrooms to be added to the school building of the town, in the village of Phenix.

The cause was heard upon bill, answer, replications and proof before a justice of the Superior Court. The justice ordered the entry of a final decree restraining said town treasurer from making further payment to the respondent McCusker on account of said contract. The cause is before us upon the respondents' appeal.

At the hearing before said justice the respondents sought to introduce the report of the school committee of West Warwick made to the financial town meeting of the town held in 1921 asking for additional school facilities in the villages of Phenix, Riverpoint and Crompton and recom-

mending the enlargement of the present Phenix school building. This evidence was excluded. It does however sufficiently appear that previous to or at the financial town meeting of 1922 the need of such added school facilities in Phenix had been brought to the attention of the taxpayers of the town. At the financial town meeting in 1922 a committee was appointed "to investigate the reported need of added school facilities at Phenix, Crompton and Riverpoint." At a special financial town meeting held on July 1, 1922, this committee, which we will hereafter designate as the special committee, made its report to the taxpayers. In that report the committee recommended that land be acquired by the town and added to the schoolyard at Phenix, and that a second story be added to a portion of the existing school building at Phenix, thereby providing two additional schoolrooms. The special financial town meeting adopted the recommendations of the special committee and empowered it to build another story on the Phenix school, to furnish the two additional rooms thus provided, and to acquire additional land for the schoolyard. The special financial town meeting appropriated fifteen thousand dollars to be expended for those purposes upon the orders of the special committee. In conformity with the vote of the town meeting the special committee purchased additional land for the schoolyard, had plans prepared for the additional schoolrooms, advertised for bids for the construction of said rooms and contracted with the respondent McCusker for doing the work at the price of eleven thousand dollars. In the latter part of July, 1922, the respondent McCusker commenced work under the contract and continued until some time after September 11, 1922. He stopped work because the town treasurer refused to pay to him, McCusker, the orders drawn in his favor by the special committee in accordance with said contract. It appears by the evidence that, at the time of the refusal by the town treasurer, the work under the contract remaining to be performed amounted in value to about one thousand dollars, and required about seven days to complete.

With reference to the powers of school committees it is provided by Chapter 1521, Pub. Laws, 1917, now Section 3, Chapter 70, Gen. Laws, 1923, as follows: "Sec. 3. The school committee shall locate all schoolhouses and shall not abandon or change the location of any without good cause; and unless otherwise provided by special law or charter said school committee of each town shall have the care and control of all public school buildings and other public school property of the town, including repairs of said buildings and the purchase of furniture and other school equipment."

It is claimed by this complainant that if the construction of the two schoolrooms in question should be regarded as a repair of the existing school building at Phenix the making of such repair was under the exclusive care and control of the school committee of West Warwick, and if said construction should be regarded as the building of a schoolhouse the authority to locate the same was exclusively in the school committee, and further that the evidence fails to disclose any formal action taken by the school committee, appearing in its records, authorizing or permitting such construction or the location of said schoolrooms.

No question is raised as to the authority of the town and of this committee to purchase additional land to be added to the schoolyard in Phenix; also the committee has in no way sought to exercise the authority which the taxpayers intended to confer upon them to provide furniture for the two new schoolrooms. It is conceded by these respondents that in accordance with the statute the power to purchase school furniture and equipment is exclusively in the school committee.

We will consider the nature of the work provided for in the contract between the special committee and McCusker. We regard it as a contract for new construction to furnish additional school facilities for the town. It was not for repairs upon the old school building, save in some minor particulars. While control of repairs upon existing school buildings is given to the school committee it is provided by

Section 2, Chapter 66, Gen. Laws, 1909, now Section 2, Chapter 69, General Laws, 1923, as follows: "Sec. 2. Any town may vote, in a meeting notified for that purpose, to provide schoolhouses together with the necessary fixtures and appendages thereof." Under this section, the building of a new schoolhouse in a town and the expenditure of money appropriated for that purpose is in the jurisdiction of the town meeting and not of the school committee. Any new schoolhouse, however, erected by the town meeting, acting through its designated agent, would not be available for school purposes unless the school committee should designate a site or the site designated by the town meeting should receive the approval of the school committee. In view of the evident intention of the legislature that the school committee, by reason of its superior information as to the needs of the schools, should fix the location of all school facilities, we think the making of the two new rooms in question, although they were added to an existing schoolhouse, should be regarded as coming within the designation of a "schoolhouse" in the statutory provision giving to school committees the authority to "locate all schoolhouses." These rooms should also be regarded as a schoolhouse which under the statute the town meeting, acting through the special committee, had power to build.

This complainant as a taxpayer should not be granted an injunction unless he establishes that the town treasurer is about to expend the town's money in payment upon a contract which is *ultra vires* of the town meeting, acting through the special committee, or upon a contract which is illegal. The providing of new school facilities was within the scope of the town meeting's powers. It could not, however force such facilities upon the school committee until that committee had approved of their location. The school committee might have designated the location before the town meeting acted or that committee might approve the location after it had been designated by the town meeting in the vote to build, as was held in *Howland* v. *School District,*

15 R. I. 184; or the school committee might effectually approve the location of such new facilities after they had been constructed by the special committee. This was recognized by the Superior Court in its final decree.

In support of his position the complainant cites the cases of *Dube* v. *Peck*, 22 R. I. 443 and *Dube* v. *Dixon*, 27 R. I 114. Each of those cases relate to the building of a schoolhouse in Bristol. In neither was the plaintiff entitled to recover whether the contract to build upon a location not approved by the school committee was considered as *ultra vires* or not. The opinions set out the well recognized principles that a person dealing with the agent of a municipal corporation is bound to ascertain the limits of such agent's authority, and that, under the statute, school committees alone have authority to locate schoolhouses. The precise question, however, as to the propriety of granting an injunction on the bill of a taxpayer in such circumstances as are presented here was not before the court. The complainant also relies upon *Austin* v. *Coggeshall*, 12 R. I. 329. The situation presented by the facts in that case is quite different from that before us. In that case upon the complaint of taxpayers of Newport the treasurer of that city was restrained from making payments upon a contract made by a committee of the city council in a matter admitted to be entirely outside the scope of the authority of the city council. On this phase, this case appears to resemble somewhat that before the court in *Mathewson* v. *Tripp*, 14 R. I. 587. It there appeared that the statute creating the Board of Public Works in Providence provided that the board might employ necessary agents and agree with them as to compensation "provided, however, that when such compensation shall exceed the sum of one thousand dollars per annum such compensation shall be subject to the approval of the city council.' The board employed two agents agreeing with each of whom for a compensation in excess of one thousand dollars per annum. The board presented the matter to the city council but the city council did not

approve the compensation in excess of one thousand dollars; neither did it expressly disapprove. The two agents remained in the employment of the board and were paid out of the city treasury their salaries as agreed for. The complainants in that case, who were taxpayers of the city, sought to enjoin the city treasurer from further payment and to have him decreed to refund the excess compensation paid to said agents before that time. Although the contract for compensation in excess of one thousand dollars had not been approved by the city council the court treated the contract as within the power of the board to make, and held that the payments made before a disapproval by the city council were not illegal. The court held the complainants to be without standing for an injunction and dismissed their bill. The rationale of that opinion is that whatever might be urged by the city in defence of an action against it brought by either of the agents to recover the full compensation provided for in the contract of hiring, the contract for compensation in excess of one thousand dollars was not beyond the power of the board of public works to make and was not void, and, without that showing, the complainant taxpayers had no standing on their bill for an injunction.

The matter just considered was not argued before us by the parties and a determination upon it is not necessary in this case. We are of the opinion that the complainant should not have the injunction which he seeks as, upon the facts, it cannot be urged, as against the respondent McCusker, that the school committee have not approved the location of the two schoolrooms in question. It is well established that as to matters within its authority a municipal corporation or a public board, such as the school committee, may be estopped to deny the existence of a fact upon which a person, by reason of the conduct of such municipality or public board, has been led to rely, and when such denial will result in injury to that person. It has been said that "this rule of ordinary morals applies as strongly

to a municipality as to an individual." In this matter the complainant is in no better position than would be the school committee or the town in a proceeding, involving the matter, in which either was a party.

During the period within which the events now under consideration took place the school committee of the town of West Warwick consisted of two members, and employed a clerk who was also superintendent of schools. At the trial in the Superior Court the complainant contended that the committee's approval of the location of the new school-rooms in question could be shown only by evidence of a formal vote of the school committee appearing upon its records. This claim seems to have been approved by the justice presiding, and to have affected his rulings with regard to the admission of evidence. There is no explicit statutory requirement that records shall be kept of the proceedings of the school committee. It does appear that a record of the meetings of the committee was made by the superintendent. Those records constitute the best evidence of the matters therein recorded. If, however, action was in fact taken and not entered upon the record such unrecorded acts are not void and a person whose rights are affected thereby may show such action by extrinsic evidence. There is no evidence of a formal approval by the school committee of the location of the two additional rooms subsequent to July 1, 1922. In the view which, from the evidence, we take of this matter, however, Mr. McCusker from the conduct of the school committee was justified in proceeding upon his contract, and after he had expended a large sum of money in reliance upon such conduct his compensation should not be withheld upon the prayer of this complainant, because no formal approval of location appears upon the records of the school committee.

At the trial in the Superior Court the respondents sought to ask the superintendent of schools the following question, which was excluded: "146Q. You were the secretary of the school committee, of course, in March 1921, Mr. Deer-

ing. As a matter of fact, Mr. Deering, the school committee of 1921, then composed of the same Mr. Roarke, the same Mr. Krantz and a Mr. Emilie Tellier, recommended to the annual financial town meeting of 1921 that additional rooms be built at Phenix, or words to that effect, did it not?" The objection and exclusion of this question was not on account of its form, nor because it was addressed to the recollection of the superintendent and did not call for the record of the town meeting. Its exclusion was solely on the ground that the matter nvolved in the question was immaterial. The respondents should have been permitted to show this recommendation of the committee, if it had been made. If established it would amount to a designation by the school committee, at that time, of the location of these new school facilities in the place where they were afterwards constructed under the contract. The town meeting meets annually and at the next meeting of the taxpayers, after the alleged designation, action was taken which resulted at the special town meeting of July 1, 1922, in a vote to build the additional rooms at the Phenix school, which action was in accord with the recommendation which the respondents claim had been made in 1921. In the circumstances this was not such an unreasonable time after the designation of a location that it should be disregarded in the consideration of this bill. The school committee is a continuing body. The two members who constituted the committee in 1922 were members in 1921. In 1921 there was a third member, who by reason of his removal from the town had ceased to be a member of the committee in 1922. If the school committee did in fact make the recommendation which the respondent sought to show, then unless notice was given by the committee to the town meeting that the recommendation of location had been withdrawn the next town meeting in 1922 might properly act upon it, and arrange for a construction in conformity with such designation of a location.

In accordance with the call for the special town meeting of July 1, 1922, the only matters acted upon at that meeting were the report of the special committee, the directions to the special committee to buy land and to build the new schoolrooms and the appropriation of money necessary for that purpose. The clerk of the meeting testified from his records that the votes in favor of those matters were unanimous. It did however appear that the vote was *viva voce* and the clerk admitted that there might have been votes in opposition which he did not hear. The complainant, who was town solicitor at the time of the meeting, testified that he voted in the negative, although he did not speak in opposition to the motion. The clerk also testified that in accordance with his record the two members of the school committee were present at the meeting of taxpayers. This latter evidence was first admitted *de bene* and afterwards excluded. While it is true that the votes of the individual members in favor of the motion would not amount to an approval of the location by the committee, we think that upon the question of estoppel, at least, the testimony was admissible for the purpose of establishing the knowledge of the committee as to the matters now under consideration, from their inception.

On July 12, 1922, before entering into the contract with the respondent McCusker, the special committee wrote to Mr. Deering, the superintendent of schools of West Warwick, that the special committee "is proceeding with all possible haste to amplify school facilities at Phenix," and requested the superintendent to give them information as to school attendance at Phenix as bearing upon the matter with which they had been charged by the town council. On July 14, 1922, Mr. Deering replied giving at length the data requested by the special committee. By law the superintendent of schools in a town, in addition to having "the care and supervision of the public schools" under the direction of the school committee, is made the "chief administrative agent of the school committee." Sec. 10,

Chap. 70, Gen. Laws, 1923. Further, the complainant introduced testimony from Mr. Deering that the schoolhouse at Phenix was under his, (Mr. Deering's) "jurisdiction." Notice to the superintendent as the chief administrative agent of the committee was notice to the committee as to matters relating to that schoolhouse.

By law "the care and control of all public school buildings and other public school property of the town" was in the school committee. Sec. 3, Chap. 70, Gen. Laws, 1923. Mr. McCusker began work under the contract in the vacation time of the school. He would have been unable to enter the school premises and begin to carry on his work against the wishes of the committee. If his action had been without their authority the committee could have ordered him to discontinue and to remove his workmen from the school premises. If he failed to comply they could have ejected him as a trespasser. The superintendent testified that both he and the two members of the school committee knew that the work was proceeding; yet it appears that from the time of the special town meeting until the filing of this suit the school committee did not notify either the special committee or Mr. McCusker that the construction of the schoolrooms was without the approval of the school committee and should not be begun, or that work should cease.

The respondents offered to prove by the superintendent, but were not permitted to do so by the justice, that before commencing work under the contract Mr. McCusker consulted with Mr. Deering the superintendent "and asked him if there was going to be any objection by the school committee of West Warwick to him proceeding with this work." The respondent should have been permitted to introduce this evidence. It would constitute notice to the committee, through its administrative agent, that, before commencing work upon the school building in its control, Mr. McCusker wished to obtain the official sanction of the committee. Upon this notice it became the imperative duty

of the school committee, if it did not approve the location of the new schoolrooms, to have so notified Mr. McCusker and not permit him to proceed to his damage.

The respondent further offered to prove that thereafter the superintendent consulted with the chairman of the school committee and later told Mr. McCusker that the chairman said, "No, that they were not going to do anything to interrupt the work." This evidence was excluded by the justice. It is undoubtedly true that the approval of the chairman of the school committee alone would not amount to an approval by the committee. In the offer of proof the statement imputed to the chairman was that "they" were not going to do anything to interrupt the work. The implication is that the statement was made by the chairman after conference with his fellow member. The ruling of the justice is not clearly erroneous. We think, however, that in the interest of justice the respondent should have been permitted to pursue this line of inquiry farther. The justice in this ruling appears to have been influenced by his conclusion that acts of the committee are valid only when done in a formal meeting and evidenced by a formal record. Joint action taken by all the members of a school board, although not at a regular meeting and not spread upon the record, may be established by extrinsic evidence, and is effectual and valid.

It appears by the records of the school committee that at a meeting held on August 21, 1922, the clerk was directed to notify the town treasurer that the special committee had not requested the school committee "to locate the new class rooms now under construction at said Phenix school." On the following day the clerk did, in writing, notify the town treasurer as directed. In the record of the meeting of August 21, 1922, also appears the following: "Committee man M. H. Roarke and the superintendent of schools Mr. Deering were appointed a committee to keep in view the construction of the building at the Phenix school and with power to act in a case of necessity." The superintendent,

Mr. Deering, testified that the records of the meetings of the school committee show no disapproval of the work carried on by the respondent McCusker under the contract.

In the record of the meeting of the school committee on September 25, 1922, the sub-committee of the school committee, appointed at the meeting of August 21, reported that it had arranged with the pastor of the church in Phenix, which is across the way from the school, for the use of the basement of the church as a schoolroom "until such time as the regular school building now under construction be ready for occupancy." It further appears in evidence that the sub-committee of the school committee hired the respondent McCusker to remove the seats and desks from the old school building and set them up in the basement of the church, and for this service McCusker was paid by the school committee.

Upon this appeal we might grant leave to the respondents to present the evidence which was erroneously excluded at the trial. (Section 30, Chapter 339, Gen. Laws, 1923.) We are of the opinion, however, that the admitted evidence leads plainly to the conclusion that, as against the respondent McCusker, the acquiescence of the school committee in the work which he was carrying on should be taken as an approval of the location of the new schoolrooms. In any proceeding against the town to recover upon the contract the town would be estopped to deny the approval of this location by the town's school committee. The situation presented here is quite unlike the ordinary erection of a new schoolhouse in a town. In this case the new rooms were being placed upon a building exclusively in the possession and control of the school committee. If the special building committee or Mr. McCusker was proceeding upon the erroneous assumption that the location had been previously designated by the school committee, or had been approved by it, or if Mr. McCusker was entering upon and prosecuting the work upon a misapprehension as to the powers of the town meeting or the special building committee, it was the

224

duty of the school committee to act. The respondent McCusker is entitled to claim, that the conduct of the school committee by its acquiescence, its silence when there was the imperative duty on its part to speak, amounts to an approval; and after he has expended large sums of money in reliance upon the reasonable interpretation of the conduct of the school committee, this complainant should not be allowed to set up the lack of a formal or even of an actual approval of the location of said schoolrooms. To permit that would be to aid in the perpetration of an injustice.

In constructing the new schoolrooms upon the first story of the old building certain small items of replacement were necessitated by the work. As a part of the performance of his contract Mr. McCusker made such replacements. If these items be regarded as repairs upon the existing school building we think the approval of the location of the new rooms carried with it the authorization to make these small matters of repair.

The decree appealed from is reversed. The cause is remanded to the Superior Court with direction to dismiss the bill of complaint.

VINCENT, J. and STEARNS, J., dissent.

*Alexander L. Churchill, John F. Murphy,* for complainant.
*Quinn, Kernan & Quinn, George H. Huddy, Jr., Huddy, Emerson & Moulton,* for respondents.