334 A.2d 416.

ALFREDINE SCHIAVULLI *vs.* SCHOOL COMMITTEE OF THE TOWN OF NORTH PROVIDENCE.

APRIL 2, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

444

KELLEHER, J. The plaintiff has taught in the elementary schools of North Providence for a period of 13 years. She is before us on her notice of appeal from a Superior Court judgment affirming a decision of the Board of Regents for Education which in turn had sustained the decision of the commissioner of education who had approved the denial by the municipality's school committee of the plaintiff's request for assignment for the second half of the 1970-71 school year.

Before proceeding to the merits of the controversy, we shall first comment on a procedural matter. In *Jacob v. Burke,* 110 R. I. 661, 296 A.2d 456 (1972), after referring to the abolition in 1969 of the "State Department of

Education" and the establishment of a "Board of Regents for Education" and the investure in the board of powers, rights and privileges formerly possessed by the Department of Education, we set forth the procedural route to be taken by a tenured teacher who is challenging a dismissal or by a non-tenured teacher who questions the school committee's failure to renew his or her employment contract. The dissatisfied pedagogue first requests a hearing from the school committee, from there, we said, he or she goes in the following sequence: to the commissioner of education, to the Board of Regents, and lastly, to the Superior Court. The plaintiff has followed this procedural path. In blazing the trail in *Jacob,* we failed to lay out the course for the unhappy litigant who wishes to go from the Superior Court to the Supreme Court. We shall now establish this final guidepost.

In designating the Superior Court as the tribunal having original appellate jurisdiction in matters of dismissals or non-renewals of teachers' employment contracts, the General Assembly has failed to provide a vehicle for review of the actions taken in the Superior Court. We recently noted a similar omission in cases involving appeals from administrative determinations made in matters relating to police discipline and zoning. *Simmons* v. *Town Council,* 112 R. I. 522, 312 A.2d 725 (1973); *Bassi* v. *Zoning Board of Review,* 107 R. I. 702, 271 A.2d 210 (1970). We shall do here what we did in *Simmons.* Lacking the statutory jurisdiction, we will exercise the revisory and appellate jurisdiction that we have over all inferior tribunals and issue a prerogative writ. Rhode Island Const. amend. XII. In the circumstances of this case we shall fashion our own writ. *Hester* v. *Timothy,* 108 R. I. 376, 275 A.2d 637 (1971).

Consequently, we will treat plaintiff's notice of appeal as the equivalent of a writ of certiorari issued by this

court for the sole purpose of reviewing the Superior Court's affirmance of the actions taken by the Board of Regents. Hereafter, in matters of this kind, review in this court will be had by way of a petition for a common-law certiorari.

The plaintiff, after graduation from college in June 1957, was provisionally certified as an elementary school teacher by the State Department of Education. This certificate was issued pursuant to departmental regulations that were authorized by G. L. 1956 (1969 Reenactment) §16-1-4(b). The regulations provided for the issuance of a provisional certificate which was good for 3 years. Thereafter, the department would issue a professional certificate which was valid for a period of 5 years. The professional certificate could only be issued after the applicant had had 3 years' "successful teaching experience in the elementary grades in Rhode Island." Either certificate generally permitted its holders to teach at any level from kindergarten through grade eight.[1] Section 16-11-1 prohibits the hiring of noncertified teachers in any school supported wholly or in part by public money. In the event such individuals are employed, the Board of Regents is authorized to deduct from the state aid due a municipality the amount of the salary paid to the noncertified personnel.

Upon being certified plaintiff went to work in North

---

[1] The basic requirement for eligibility for either certificate is a bachelor's degree from an approved institution. The provisional must have also completed 30 semester hours of certain approved education courses. The professional certificate regulations require the successful completion of 36 semester hours of approved courses. The professional certificate is renewable on a showing that the holder has successfully completed 6 semester hours of courses. In October 1964, the regulations were changed in that a provisional was valid for 6 years and a professional certificate was good for life. The only change of substance was a proviso that called for the so-called professional to have a master's degree or "thirty-six semester hours of approved study beyond Bachelor's Degree."

Providence. When her provisional certificate expired in 1960, she was given a professional certificate. At this point plaintiff acquired status as a tenured teacher who could be dismissed only for "good and just cause" after a hearing held by the school committee. Sections 16-13-3 and 4. She continued to teach in the North Providence school system.

In 1965, plaintiff applied for and was granted a second professional certificate which would expire at the end of the 1969-70 school year. Sometime during the summer recess of 1970, two events occurred. On August 28, the superintendent of schools notified plaintiff of her teaching assignment for the coming school year. The plaintiff applied to the certification section of the Board of Regents for a third 5-year certificate and was told that it could not be issued because she had failed to present proof that she had successfully completed the 6 semester hours of study called for by the pertinent regulations.

At this point, plaintiff conferred with the superintendent of schools and told him that in the light of the information given her by the state, she would have to seek a leave of absence for the first half of the coming school year so that she could earn the necessary credits. The superintendent advised her that there was no necessity that she contact the school committee since he would do it for her. He told plaintiff to put her request in writing and send it to him.

The plaintiff did as she was told. The written request was sent. The superintendent presented the request to the committee and plaintiff went off to college where she successfully completed the requisite courses. In January 1971, she reported back to the superintendent and asked for an assignment. None was forthcoming. The plaintiff first sought the assistance of her union. Acting under its collective bargaining agreement, the union filed a grievance.

Attached to one of the briefs is the superintendent's reply to the grievance. His response is dated May 12, 1971, and reads, "This matter is before the school committee, hence it is beyond the scope of the Superintendent." This entry tells us that the school committee took no action whatever on the leave request. It would appear that in parliamentary parlance the request was tabled.

Confronted with inaction on the municipal level, plaintiff has followed the lengthy procedural route delineated in *Jacob*. She has been to the commissioner of education, the Board of Regents, and the Superior Court. The regents characterized the committee's failure to act on plaintiff's leave request as "discourteous" or "callous." However, while not condoning the committee's nonfeasance, the board was unable to classify the refusal to assign as "unlawful." The trial justice, in affirming the regents' decision, observed that the appeal turned on one basic fact: "* * * plaintiff left her job without permission and she cannot now complain if the School Committee refuses to rehire her and give her a teaching assignment." He therefore held §16-13-4's hearing provisions inapplicable to plaintiff. We think this appeal has a bit more to it than appeared to the trial justice.

The record indicates that the school committee has taken no formal action on the leave request. At no time prior to plaintiff's appearance before the commissioner of education in November 1971 did the committee ever make its position known. Over a year after its receipt of plaintiff's request, it argued that its failure to act was based upon the fact that plaintiff was not employable in September 1970 because of her lack of a certificate. The committee's response is not only tardy but also no defense to these proceedings. We have within recent times recognized that estoppel may be invoked against a governmental agency when appropriate circumstances, justice,

and right so require. *Town of Glocester* v. *Olivo's Mobile Home Court, Inc.*, 111 R. I. 120, 300 A.2d 465 (1973); *Rotella* v. *McGovern,* 109 R. I. 529, 288 A.2d 258 (1972); *Ferrelli* v. *Department of Employment Sec.*, 106 R. I. 588, 261 A.2d 906 (1970). While in *Ferrelli* we observed that mere nonaction will not be sufficient to justify the application of estoppel, there has been an outstanding exception to the nonaction principle. It occurred a half century ago in *Murphy* v. *Duffy,* 46 R. I. 210, 124 A. 103 (1924), a case whose factual pattern describes a situation somewhat similar to the one in which plaintiff finds herself.

Murphy was an irate taxpayer who sought to enjoin the Treasurer of the Town of West Warwick from paying a contractor for work he, the contractor, had performed in building an addition to one of the town's schoolhouses. The taxpayer contended that the contractor's efforts should go unrewarded because the school committee had never authorized the addition. This court agreed that no formal vote had been made but ruled that the committee could not avoid payment due the contractor. The contractor had spoken to the superintendent of schools and made it clear that he would not commence work until he had received the committee's stamp of approval. It was noted that the superintendent was by law the committee's chief administrative agent. The court then went on to say, "Upon this notice, it became the imperative duty of the school committee, if it did not approve * * * to have so notified [the contractor] and not permit him to proceed to his damage." *Id.* at 221-22, 124 A. at 108. The court then ruled that the town would be estopped to deny the committee's approval of the work done.

Today, the superintendent is still a school committee's chief administrative agent. Section 16-2-11. Nothing has happened in the past 50 years that would cause us to abandon the rationale of *Murphy.* Silence, we have said,

can be the basis for estoppel where there exists a duty not to remain silent as where the circumstances require one to speak lest such silence would reasonably mislead another to rely thereon to his detriment. *Martines* v. *Terminal Methods, Inc.*, 101 R. I. 599, 225 A.2d 790 (1967).

The plaintiff has consistently maintained that, as the result of her conversation with the school superintendent and the committee's silence, she was under the impression that her September to January sabbatical had received the necessary approval. She returned to the college campus and garnered the requisite credits. On January 29, 1971, the regents' certification section issued a certificate to plaintiff. It indicates that plaintiff is a professional teacher who is authorized to serve in the elementary grades of any of our public schools, and encompasses the 5-year period beginning August 1, 1970 and ending 5 years thereafter. For about 10 months following her request for a new assignment, it appears that the committee never informed plaintiff as to the reason for its inaction. However, when the appellate process began, the committee contended that it tabled the leave request because the loss of certification also converted plaintiff from an employee to a nonemployee. While tabling a motion is a well-recognized device in legislative chambers, it had no place in the present circumstances.

The committee had a duty to vote the plaintiff's leave request either up or down. It was aware of the plaintiff's predicament. Its nonaction precluded the plaintiff, a tenured teacher, from exercising her right to be heard by the committee on such matters as the correctness of the information supplied her by the certification officer in the summer of 1970, as well as the preciseness of the state regulations relating to certification. She was entitled to a hearing at the municipal level as to whether or not she had in fact properly lost her status as a professional ele-

mentary teacher. By ignoring the plaintiff's initial request, the committee has brought upon itself a 4-year-old reminder of her presence. We will follow the rationale of *Murphy* and hold that the school committee at this stage of the proceedings is estopped to deny that the plaintiff's absence from the eighth grade at Birchwood School during the first half of the 1970-71 school year was the result of her being "on leave without pay" during that interval. When she contacted the superintendent in January 1971, she was apparently ready, willing, and able to accept a teaching assignment, and she should have been treated as any other similarly situated teacher returning after leave.

Treating the plaintiff's notice of appeal as a writ of certiorari, the judgment entered in the Superior Court is quashed, and the records in the case are ordered returned to the Superior Court with our decision endorsed thereon.

*Natale L. Urso,* for plaintiff.

*Richard J. Israel,* Attorney General, *Dorothy A. Carr,* Special Asst. Attorney General, for defendant.