DECISION
Before this Court is the appeal of East Greenwich Oil Co., Inc. and Robert DeLisle (Appellants) from a decision of the Department of Environmental Management (DEM). Jurisdiction in this Superior Court is pursuant to G.L. 1956 § 42-35-15.
Travel/Facts
Appellant Robert DeLisle is the president and owner of East Greenwich Oil Co., Inc. located at 390 Main Street in East Greenwich, Rhode Island (Facility). In March of 1985, DeLisle timely registered his facility which houses at least four Underground Storage Tank (UST) systems in accordance with Section 6 of the Emergency Regulations for Underground Storage Facilities Used For Petroleum Products and Hazardous Materials. The facility's registration was renewed each year thereafter.
In February of 1988, appellant received a letter from DEM regarding underground tank abandonment and closure at the Facility. (See Appellants' Exhibit #5). The appellant promptly responded by contacting DEM by telephone to clarify that the tanks were not abandoned, and the matter was resolved.
In March of 1993, DEM's Department of Waste Management sent a letter to appellants notifying them that documentation regarding spill containment and precision testing had not been filed with DEM for the years 1986-1992 pursuant to UST Regulations 10.05 (B), 10.08 (h) and 10.13. (See DEM's Exhibit #2).
On or about April 1, 1993, the appellant contacted DEM in response to the letter and promptly submitted documentation that satisfied the requirements of the UST requirements for spill containment for the stated time period. Appellant undertook the required precision testing and filed the results in October of 1993.
On May 25, 1993, DEM issued a Notice of Violation and Order (NOV) citing appellants' failure to perform and/or file the results of precision testing for the years 1986-1992 and included a penalty assessment of thirty-seven thousand eight hundred dollars ($37,800.00).
In June 1993, appellant requested an administrative hearing regarding the imposition of the fine. Following the hearing, the Chief Hearing Officer ruled in favor of DEM and assessed an adjusted administrative fine of twenty-nine thousand seven hundred dollars ($29,700.00). (See, Final Decision and Order). The Chief Hearing Officer's Recommended Decision was adopted by the Director as a Final Agency Order on October 5, 1995.
On appeal, appellants argue that the decision and the fine imposed by the Chief Hearing Officer of DEM were clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Specifically, the appellants argue that sufficient evidence existed to support an argument of equitable estoppel against DEM, and the Hearing Officer's assessment of the administrative penalty was excessive, improperly calculated, and not supported by the evidence.
Alternatively, DEM argues that the hearing officer correctly held that there was insufficient evidence to support appellants' argument of estoppel, and the administrative penalty was properly calculated and should be upheld.
Standard of Review
The review of a decision of the Department of Environmental Management by this Court is controlled by R.I.G.L. § 42-35-15
(g), which provides for review of a contested agency decision:
 (g) The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact.Costa v. Registry of Motor Vehicle, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Department's Decision. Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v.George Sherman Sand and Gravel Co., 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently from the agency. Berberian v. Dept. ofEmployment Security, 414 A.2d 480, 482 (R.I. 1980). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458. A trial court may also be guided by principles of equity when reviewing questions of law. See Defalco v. Voccola, 507 A.2d 474, 476 (R.I. 1989).
Estoppel
Appellants argue that there was substantial evidence to support an argument of equitable estoppel against DEM to prevent the agency from enforcing its precision testing requirements against the appellants, as well as the violations and administrative penalties resulting therefrom. In support of their argument, appellants assert that over the course of their dealings with DEM, several incidents led them to believe they were not required to perform and file precision tests and that the facility was in compliance.
Alternatively, DEM asserts that the hearing officer properly held that there was insufficient evidence to support an equitable estoppel argument and that specifically, appellants had failed to prove that DEM made any misrepresentations upon which appellants could have reasonably relied. DEM also contends that the appellants' estoppel argument was untimely pursuant to Rule 12 (b) because it was not asserted until the date of the hearing.
With respect to appellants' timely assertion of the defense of equitable estoppel, Rule 12 (b) of the Administrative Rules of Practice and Procedure for the Administrative Adjudication Division for Environmental Matters ("AAD Regulations") upon which DEM relies, states that the request for a hearing shall state the specific issues in dispute and the facts in support thereof and any other additional information. Consequently, DEM argues that appellants' failure to raise their estoppel argument until the hearing itself is basis enough for the hearing officer to reject appellants' claim of estoppel. However Rule 15 (d) states that the Notice of Hearing shall provide sufficient notice of the issues involved, and further provides that "if the issues cannot be fully stated in advance of the hearing, they shall be fully stated as soon as practicable." Review of the record indicates that the appellants' pre-hearing memorandum and appellants' answer to DEM's pre-hearing memorandum clearly set forth the issues in dispute, namely, the applicable precision testing requirements and the fines imposed therefrom. Accordingly, the appellants' equitable argument of estoppel with respect to these issues could have been considered by the hearing officer.
When considering whether the doctrine of estoppel is an appropriate device to use against the government, the Court must remain mindful of both the problems encountered by the petitioner as well as the public interest involved. Lerner v. Gill,463 A.2d 1352, 1363 (R.I. 1983). The public has a strong interest in the regulation of environmental matters that affect the public safety and welfare that should be considered as well as appellants' rights. The Court has applied the doctrine of equitable estoppel against administrative and municipal authorities. Greenwich BayYacht Basin Assoc. v. Brown, 537 A.2d 988, 991 (R.I. 1988)(citingLoiselle v. City of East Providence, 116 R.I. 585, 359 A.2d 345
(1976)); Schiavelli v. School Committee of North Providence,114 R.I. 443, 334 A.2d 416 (1975); Ferrelli v. Dept. of EndowmentSecurity, 106 R.I. 588, 261 A.2d 906 (1970). The doctrine has been specifically invoked with regard to the issuance and revocation of certificates, licenses and zoning regulations. See,Defalco v. Voccola, 557 A.2d 474 (R.I. 1989); Town of Glocesterv. Olivo's Mobile Home Court, Inc., 300 A.2d 465 (R.I. 1973);Santos v. Town of East Providence, 208 A.2d 387 (R.I. 1965);Frament v. Board of Registration for Engineers, 1996 R.I. Super. 55 (1996).
Estoppel constitutes extraordinary relief and will not be applied unless it clearly must be balanced in favor of the parties seeking relief under this doctrine. Ferrelli, 106 R.I. 592, 593. In proper circumstances a public agency may be estopped from denying representations made by its agents causing the individual to act to his detriment in reliance upon these statements. Lerner v. Gill, 463 A.2d 1352, 1362 (R.I. 1983)(citing to Schiavelli, 334 A.2d at 419). The facts and circumstances of each case must be closely scrutinized to determine whether justice requires the imposition of estoppel.Id.
The hearing officer in the instant case found that estoppel was not invoked because the appellants did not prove that DEM's annual renewal of the certificate of registration was a representation that appellants were in compliance and that the conduct by DEM was not done with the intention nor expectation that it would be acted upon by appellant. Based on those factors, the hearing officer found there was insufficient evidence to warrant the application of the doctrine.
There are four basic elements of equitable estoppel as set forth in Clauson v. Smith, 823 F.2d 660, 661 (1st Cir. 1987).[1]
The first element of which is that the party to be estopped must know the facts. Id. at 661. The relevant facts in this matter are the requirements for Underground Storage Tanks including those for the precision testing and documentation filing requirements. The Department of Environmental Management promulgated the rules and regulations governing appellants' activity, and the officers and representatives thereunder are imputed with the knowledge and understanding of the applicable standards. The record indicates that DEM also had specific knowledge that precision testing had not been conducted on the tanks because appellant indicated so on his application for registration. (Appellants' Application for Registration, April 1, 1985). In fact, the appellant made a notation of "N/A" beside one of the questions in the precision testing portion of the application. Id. A notation of "N/A" expressly signified that the testing was "not applicable" (Random House Dictionary, 2d Edition, p. 1274). The registration was approved notwithstanding the appellants' voluntary disclosure that he had not performed any precision testing and such approval further constituted a ratification that the testing was not applicable. See also, Rotella v. McGovern, 109 R.I. 529, 536-538 (1992). From 1986-1992, DEM was also aware that appellant had not submitted any precision testing documentation pursuant to the regulations. (See Transcript p. 30).
The second element of estoppel is that the party estopped "must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe it is so intended." Clauson, at 661. Appellants maintain that they believed that the issuance of their initial registration was contingent upon compliance with DEM regulations, and that the annual renewal of their registration by DEM was representative that their operations were in compliance. DEM avers, however, that the hearing officer made the proper determination that appellants' estoppel argument should fail because the appellants did not prove that there was any conduct, action or language by DEM upon which appellants could have reasonably relied. DEM maintains that the registration for the facility was indicative only of proper completion of the registration process and payment of fees and was not representative of compliance with UST regulatory requirements. In support of their argument, DEM notes that the registration certificate itself does not contain any language that confirms the Facility's operations are in compliance, and thus appellants' reliance on such is unreasonable.
Although the registration certificate itself does not contain any express language that the respective Facility's operations are in compliance with UST regulations, it is important to refer to the common meaning and statutory construction to determine appellants' reliance and to ascertain whether the hearing officer's determination was supported by substantial evidence. The DEM Regulations for Underground Storage Facilities Used for Petroleum Products and Hazardous Materials, Section 7 (a) states that an operator shall apply for and obtain a certificate of registration from the director in accordance with the regulations. Section 7 (d) of the Regulations further states that failure to obtain a certificate constitutes a violation of the regulations for which penalties may be imposed, and which necessitates closure procedures for the facility.
The essence of the preceding section language provides that the lack of a registration certificate warrants immediate facility closure procedures. Consequently, it was reasonable for the appellant to infer that possession of a registration certificate represents that at the least, a facility can maintain its operations. Because appellants' registration application was approved inclusive of appellants' indication that the tanks were not precision tested, it was not unreasonable for the appellants to conclude that the issuance and renewal of their registration were representative of the fact that the information contained therein was acceptable to DEM. "It is axiomatic that a granting of a permit warrants a reasonable conclusion that the activity permitted thereby does not violate the legislative mandate of the Commission." Fromer v. Boyer-Napert Partnership, 599 A.2d 1074, 1081 (Conn. Super. 1990).
Also, Section 8 of the Regulations provides that the director's issuance of a registration certificate can be denied, revoked or modified only after notice and hearing by the director. Thus, the registration certificate can be classified as something akin to a license or permit. Sections 46-12 et seq. and 23-19 et seq., under which the Underground Storage Tank Regulations were granted statutory authority, both specifically use the "permit" when describing the director's authority to renew, revoke, modify or suspend same. Section 23-19.1-10, et seq. ("Hazardous Waste Management Act"), also specifically use "permit" when describing the director's powers and duties pursuant to the rules and regulations. See, also, AAD Regulations, Rule 12 (b) (use of word "license" or "permit" as subject of requested hearing).
Pursuant to the preceding section, a permit requires a showing that the operation of the facility complies with the applicable rules and regulations under the chapter. Specifically, Sections 10.1 and 10.2 expressly state that "the director shall only grant permits to hazardous waste management facilities upon a showing that the facilities are required to manage hazardous waste generated in the state." See also, Davis v. Wood,444 A.2d 190 (R.I. 1982) (DEM refused to renew license due to violations and non-compliance with rules), Santos v. City Council of EastProvidence, 208 A.2d 387, 99 R.I. 439, 443)("Retention and possession of such a license evidences that his operation thereof is in compliance with regulations established"); G.L. 45-24-31
(wherein zoning certificate acknowledges that use, structure, building or lot complies with applicable ordinances or is an authorized variance therefrom). Consequently, appellants' understanding that the issuance and annual renewal of their registration certificate were a representation that their operations, as they indicated, were in compliance or constituted a form of compliance acceptable to the agency was not unreasonable in light of the circumstances. Accordingly, the hearing officer's conclusion otherwise was not supported by substantial evidence.
The third element of an equitable estoppel assertion is that the latter party (appellants) must be ignorant of the true facts. Appellants contend that they were never informed of a duty to precision test their tanks and submit documentation reporting the results. Although the original application for registration contains an inquiry as to whether the tanks had been precision tested, appellants aver that they had no knowledge of an obligation to precision test the underground storage tanks and file documentation. Specifically, appellants note that their correspondence with DEM in reference to regulations, violations or procedures, was limited to a letter from DEM in February of 1988 which informed appellants only of potential violation with regard to tank abandonment and closure procedures and a telephone call regarding same. During the telephone conversation resolving the matter, appellants maintain that they were never informed of any remaining duty to precision test the tanks or file any documentation. In support of their argument, appellants contend that DEM's Owner's Compliance Guide, first published in 1993, was distributed in an effort to inform owner's of the requirements and to clarify existing confusion about Underground Storage Tank Regulations.
DEM contends that the appellant was imputed with constructive knowledge of the regulations, particularly because the activity is highly regulated, and that "fact sheets" with relevant DEM information are distributed with each invoice. DEM also avers that the Owner's Compliance Guide was simply a public outreach effort and merely supplemental to the Regulations.
Although the applicable DEM Regulations existed at the time of appellant's registration, the appellant's testimony reveals that he had no knowledge that he was required to precision test his tanks and file documentation, especially since he had routinely submitted his registration renewal fee without precision testing documentation and received the registration certificate without question. Furthermore, the record reveals that the appellant was never sent a notice indicating that his original registration application contained a potential violation of precision testing requirements and was not sent a notice of violation regarding precision testing requirements and documentation for six years. The record also reveals that DEM acknowledged that the regulations in effect at the time were more difficult to understand and confusing so that a need existed to distribute new guidelines. (Transcript, at 65, 122). Ms. Cabeceiras, DEM's Senior Environmental Scientist testified that "[there was] a need to make [the regulations] easier to understand". (Transcript at 66.) A review of the record indicates that there was no indication of fraud or misrepresentation on behalf of the appellant to conceal the fact that the tanks had never been precision tested. Appellant offered undisputed evidence that he was unaware of the precision testing requirements until the notice of violation in 1993, and the hearing officer did not find to the contrary.
The last element of equitable estoppel is that the party (appellant) must rely on the former's conduct to his injury. It is clear from the record that appellants relied on the renewal of the registration as an indication that the facility was in compliance. There was no indication in the record that the appellants willfully or intentionally violated the requirements. Appellants' reliance thereon resulted in the imposition of a considerable administrative fine being imposed all at once to his detriment.
After review of the entire record, this Court finds that the agency's decision was not supported by the reliable, probative, and substantial evidence on the record and constituted an abuse of discretion such that substantial rights of the appellant have been prejudiced. The decision is hereby reversed.
Consistent with this Court's decision, DEM is further estopped from calculating and imposing fines for the subject period of 1986 through 1992.
Counsel shall submit the appropriate judgment for entry.
[1] The hearing officer in the instant case used an adaptation of these same factors in rendering her decision and order. See, Decision and Order AAD No. 93-0261, Page 11-12 (citing J. Pomeroy, Equity Jurisprudence, Section 805).