DECISION
Before the Court is an appeal from a decision of the North Providence Zoning Board ("Board") denying plaintiff's, Rosa DiGiovanni ("plaintiff"), request for, inter alia a use variance and a dimensional variance. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The plaintiff is the owner of property located at 82-84 Alexander Street in North Providence. This property is further described as Lots 34, 35, and 36 in the Town of North Providence, Tax Assessor's Plat 5. Plaintiff's former husband, Gabriel DiGiovanni, owns the adjacent lots located at 80 Alexander Street. This property is further described as Lots 48, 49, and 50 on the Town of North Providence, Tax Assessor's Plat 5. The subject property, along with adjacent lots located at 80 Alexander Street, was once jointly owned by plaintiff and her former husband. When the DiGiovannis were divorced in 1996, as part of a divorce settlement, plaintiff was awarded the property located at 82-84 Alexander Street, while Gabriel DiGiovanni was awarded the property located at 80 Alexander Street.
After their divorce, the DiGiovannis, attempted to record new deeds in order to reflect the changes in ownership for the respective properties. In attempting to record their deeds, however, the DiGiovannis were informed that all their lots had merged, due to common ownership, and that by recording the deeds with new ownership and new lot lines, they would be creating two substandard lots for both parcels. For this reason, both plaintiff and her former husband filed separate applications with the Board for their respective properties. In her application, plaintiff petitioned the Board for relief from the following provisions of the North Providence Zoning Ordinance ("Ordinance"): (1) Article 2 Section 203-District Use Regulations; (2) Article 2 Section 204-District Dimensional Regulations; (3) Article 4 Section 408-Building or Structure Nonconforming by Use; (4) Article 4 Section 409-Building or Structure Nonconforming by Dimension; (5) Article 5-Standard for Variances; and (6) Article 9-Administration and Enforcement (Powers of the Board).
A hearing was held before the board in April 1997. A review of the record and transcript of testimony reveals that in 1979, prior to the DiGiovannis' divorce, plaintiff and her former husband had petitioned the Board for permission to erect a duplex dwelling, on the property listed as Lots 34, 35, and 36 (48. 49, and 50). containing approximately 9, 599 square feet in a Residential Limited District. See Defendant's Exhibit 2. On or about August 16, 1979, the Board granted the DiGiovannis' request. See Defendant's Exhibit 3. According to plaintiff's testimony, approximately two or three years later, the DiGiovannis, on their own initiative, transformed this duplex into a quad-plex (4 units). (Tr. at 5-6.) Although plaintiff does not deny the fact that she never received Board approval to create this quad-plex, plaintiff did testify that someone told "[plaintiff and her former husband] to go ahead and do it and don't worry about it." (Tr. at 7.)
On or about May 20, 1997, the Board issued a written decision denying plaintiffs application. The Board did, however, grant Gabriel DiGiovanni's application. The plaintiff has timely appealed and is now before this Court. The plaintiff argues that the Board acted unlawfully and violated her rights in that it approved new subdivision lines for the 80 Alexander Street property and denied the same subdivision lines as they applied to her property located on 82-84 Alexander Street. Additionally, plaintiff argues that the doctrines of estoppel and laches preclude defendants from denying her use of the four-unit dwelling.
 Standard of Review
This Court possesses appellate review jurisdiction of a zoning board of review decision. Pursuant to G.L. § 45-24-69
(D):
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court, when reviewing the decision of a zoning board of review, must examine the entire certified record to determine whether substantial evidence exists to support the finding of the zoning board of review. Salve Regina College v. Zoning Bd. ofReview, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. ZoningBd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record.Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v.Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 I. Zoning Board Decision
The plaintiff argues that the Board acted unlawfully and violated her rights in approving new subdivision lines for the 80 Alexander Street property and denied the same subdivision lines as they applied to her property located on 82-84 Alexander Street. A review of the record evidences that on her application plaintiff asked for the relief from the following provisions of the Ordinance: (1) Article 2 Section 203-District Use Regulations; (2) Article 2 Section 204-District Dimensional Regulations; (3) Article 4 Section 408-Building or Structure Nonconforming by Use; (4) Article 4 Section 409-Building or Structure Nonconforming by Dimension; (5) Article 5-Standard for Variances; and (6) Article 9-Administration and Enforcement (Powers of the Board). However, for purposes of this appeal and with respect to the application, the only relevant issue before the Board was whether plaintiff was entitled to a use variance.
 A. North Providence Zoning Ordinance
Article IV of the Ordinance discusses nonconformance. Section 407 of Article IV entitled, Existence by Variance or Special Use Permit, provides:
 "A nonconforming building, structure, sign or parcel of land or the use thereof, which exists by virtue of a variance or a special use permit (or special exception) granted by the Board, shall not be considered a non conformance for purposes of this Article, and shall not acquire the rights of this Article. Rather, such building, structure, sign, parcel of land, or use thereof, shall be considered a use by variance or a use by special permit and any moving, addition, enlargement, expansion, intensification or change of such building, structure, sign, parcel of land or use thereof, to any use other than a permitted use or other than in complete conformance with this Ordinance, shall require a further variance or special use permit from the Board."
Thus, per § 407, a party who desires an "addition, enlargement, expansion, intensification or change" of a nonconformance existing by special exception is required to obtain a further variance or a special use permit from the Zoning Board. Article V § 507 of the Ordinance discusses "Extending or Enlargement of a Special Use Permit." That section provides that the "Zoning Board . . . may not extend or enlarge a special use permit except by granting a new special use permit.
Article II of the Ordinance further governs "Zoning District Regulations." Although Section 203 of that Article, entitled "District Use Regulations," permits a two family structure in a Limited Household District ("RL") Residential Zone by way of a special use permit, that same section clearly prohibits a Multi-family dwelling in a RL zone.
In 1979, plaintiff and her former husband applied for, and were granted, a special exception to erect a duplex on the property which today is identified as 82-84 Alexander Street. See
Defendant's Exhibits 2 and 3. Thus, per § 407, plaintiffs were required to obtain either a variance or another special use permit in order to transform the duplex into a multi-family dwelling. Since a multi-family dwelling is clearly prohibited in a RL zone, plaintiff would require a use variance in order to maintain the quad-plex structure.
 B. Use Variance
Section 45-24-31 (61) of the Rhode Island General Laws defines the term variance. A variance is defined as "permission to depart from the literal requirements of a zoning ordinance. An authorization for the construction or maintenance of a building or structure, or for the establishment or maintenance of a use of land, which is prohibited by a zoning ordinance." According to Section 45-24-31 (61), there are only two categories of variances: those being a use variance and a dimensional variance. Pertinent to the case at bar is the definition of use variance. A use variance is defined as "permission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance." G.L. § 45-24-31(61)(a). With respect to a use variance, Article 5 of the North Providence Zoning Ordinance provides:
 Section 503. Standard for Variances
 "A. In granting a variance, the Board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) that the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not the general characteristics of the surrounding area; and not due to a physical or economic disability of the applicant;
 (2) that said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain (emphasis added);
 (3) that the granting of the requested variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan of the Town; and that the relief to be granted is the least relief necessary.
 B. The Board shall in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 (1) in granting a use variance, the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of this ordinance. Non conforming use of neighboring land or structures in the same district and permitted use of land or structures in an adjacent district shall not be grounds for granting a use variance; and
 (2) in granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the owner's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."[1]
In Almeida v. Zoning Board of Review of the Town of Tiverton,606 A.2d 1318 (R.I. 1992), the Rhode Island Supreme Court discussed the standard for obtaining a use variance. To obtain a use variance, an applicant must demonstrate that being restricted to the permitted uses within the zoning ordinance will deprive him or her of all beneficial use of the property in question. Id.
at 1320. "Hardship in the zoning sense is concerned not with personal difficulties. . . ." Worrell v. DelSesto, 116 R.I. 409,357 A.2d 443, 444 (R.I. 1976) (The fact that a landowner would be deprived of rental income which is relied upon, in order to finance the purchase price of a multiple unit dwelling in which he resides, is not a hardship for purposes of granting a variance). A showing that there exists a more profitable use and resulting financial hardship if denied does not justify granting a use variance. Rozes v. Smith, 120 R.I. 515, 388 A.2d 816, 820 (1978). An applicant may not rely on bald statements of economic hardship, but must set forth probative evidence such as financial statements or cost data. Gaglione v. DiMuro, 478 A.2d 573, 576 (R.I. 1984).
In its decision. the Board concluded that plaintiff's application should be denied. After fully considering the testimony presented, the Board made the following findings of fact:
 "1. The area in question is located at 82-84 Alexander Street in a Residence Limited District under the Zoning Ordinance.
 2. The applicant requests permission for a Division of Land to permit a four (4) unit apartment.
 3. The applicant seeks a variance on the District Dimensional Regulations, Special Use Permit under the District Dimensional Regulations and extension of a Legal Non-Conforming Use, Powers of the Board.
 4. The Board was of the opinion that the proposed use did not conform to our special use permit laws, it does not comply with the requirements as set forth in Articles 2 and 5, the hardship has resulted from the prior action of this applicant. It will alter the character of the surrounding neighborhood, it is not compatible with neighboring land uses, it will effect property values in the area, and it will create a nuisance in the neighborhood. . . ."
The record evidences that plaintiffs hardship is the result of her own actions. The plaintiff testified that approximately two or three years after receiving a special use permit to erect a duplex on her property, she and her former husband, on their own initiative, transformed the duplex into a quad-plex (4 units). (Tr. at 5-6.) Further, it is evident from the record that plaintiffs hardship results primarily from her desire to realize greater financial gain. During her testimony, before the Board, plaintiff admitted that she and her former husband converted the duplex into a four-unit dwelling because the duplex "wasn't making money for [them]." (Tr. at 7.) The plaintiff did not demonstrate to the Board that, without the relief she requests, she will be completely deprived of all beneficial use of her property. Accordingly, the Board's decision to deny the variance is supported by competent evidence of the record.
The Plaintiff additionally argues that the Board acted unlawfully in granting Gabriel DiGiovanni's and not her requested relief. The application of Gabriel DiGiovanni is not before this Court. Furthermore, the Board in granting relief does not consider the non-conforming use of any neighboring land as pursuant to G.L. 1956 § 45-24-45, "[n]onconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered [by the Board] in granting a use variance;. . . ." However, this Court notes that pursuant to the Town of North Providence Land Development and Subdivision Regulations, the Board does lack authority to use zoning relief to subdivide land.
 II. Estoppel
The plaintiff also argues that the doctrine of estoppel precludes the defendant from denying her use of her four-unit dwelling. First, plaintiff contends that she relied to her detriment on representations from certain unnamed town officials who assured her that she could transform her two family dwelling in to a four-unit dwelling. The plaintiff adds that, in fact, the Town changed appropriate records to reflect the change from a duplex to a four-unit dwelling. Further, plaintiff cites Town ofGlocester v. Olivo's Mobile Home Court, Inc., 111 R.I. 120,300 A.2d 465 (R.I. 1975) and Rotella v. McGovern, 109 R.I. 529,288 A.2d 258 (R.I. 1972) arguing that the Town of North Providence, which has accepted taxes for her four-unit dwelling for several years, cannot now decide that her dwelling is prohibited.
In Providence Teacher's Union v. School Bd., 689 A.2d 388
(R.I. 1997), the Rhode Island Supreme Court enunciated the elements of equitable estoppel:
 "The indispensable elements of equitable estoppel, or estoppel in pais, are: `first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct did induce the other to act or fail to act to his injury.;'" Id. at 391-92 (quoting Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)).
The granting of relief, under this doctrine, is extraordinary and will not be permitted except in the unusual instance where the equities are clearly balanced in favor of the party who is seeking relief. Greenwich Bay Yacht Basin Assoc. v. Brown,537 A.2d 988, 991 (R.I. 1988). Equitable estoppel has, however, been invoked as against administrative agencies and municipal authorities. Id. (citing Loiselle v. City of East Providence,116 R.I. 585, 359 A.2d 345 (1976); Schiavulli v. School Committee ofNorth Providence, 114 R.I. 443, 334 A.2d 416 (1975); Ferrelli v.Department of Employment Security, 106 R.I. 588, 261 A.2d 906
(1970)). See also Olivo's, 300 A.2d at 471.
After a thorough review of the record, this Court finds that the doctrine of estoppel is inapplicable to the case at bar. Although plaintiff testified that someone in the town had told her and her former husband to "go ahead" and convert their two family dwelling into a four unit apartment, plaintiff did not identify the individuals and the authority that they possessed to give her permission to convert her dwelling by circumventing the application process and by neglecting to otherwise conform with the normal application rules that govern said activities. While it is clear that a municipality acting within its authority may be estopped from denying that its acts induced another's detrimental reliance, estoppel is not applicable when the municipality's actions are ultra vires. Technology Investors v.Town of Westerly, 689 A.2d 1060, 1062 (R.I. 1997).
Further, this Court finds that plaintiff's reliance onRotella and Town of Glocester is misplaced. While both of these cases held that the doctrine of estoppel could be applied as against municipalities. Town of Glocester dealt with estoppel in the context of a quasi-zoning regulation (licensing) whileRotella dealt with estoppel in the context of a tort litigation.
Finally, with respect to estoppel here, this Court notes that there was no reasonable detrimental reliance on the part of plaintiff with respect to actions of the town or its officials.See Technology Investors, 689 A.2d at 1062. The plaintiff has, in the past, gone through the application process in order to acquire permission to build the duplex which was ultimately converted into the present day four-unit dwelling. She was therefore cognizant of the fact that there was a specific process by which to obtain relief from the zoning board, evidencing her lack of reasonable reliance.
 III. Laches
Finally, plaintiff argues that laches precludes the defendant from denying her the use of her four-unit dwelling. The equitable defense of laches precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant. O'Reilly v. Town of Glocester, 621 A.2d 697, 702 (R.I. 1993) (citing Fitzgerald v. O'Connell, 120 R.I. 240, 245,386 A.2d 1384, 1387 (1978)). "Laches . . . involves not only delay but also a party's detrimental reliance on the status quo." Adamv. Adam, 624 A.2d 1093, 1096 (R.I. 1993) (emphasis added). InO'Reilly the Rhode Island Supreme Court outlined a two part test to be used in determining whether the defense of laches can be sustained: "First, there must be negligence on the part of the plaintiff that leads to a delay in the prosecution of the case. Second, this delay must prejudice the defendant." O'Reilly, 621 A.2d at 702. Courts have found that the equitable defense of laches does not operate as a defense in public interest cases.Id. at 703. This is due to "(1) the importance of rights at stake when the interests of the public are asserted and (2) the determination that those rights cannot be compromised or forfeited by the negligent or illegal acts of public officials who fail to carry out their governmental obligations. Id. (citingStudent Public Interest Research Group of New Jersey v. P.D. Oil Chemical Storage, Inc., 627 F. Supp. 1074, 1085 (D.N.J. 1986).
Although the Town, through its officials and/or the Zoning Board, may have acted negligently or illegally in allowing plaintiffs unit to remain in its current existence, this Court will not use laches to sanction the illegal and negligent behavior of the municipality. See O'Reilly, 621 A.2d at 703. It is quite clear that the North Providence Zoning Ordinances were established for reasons of public interest. This is evidenced in the language of the Zoning Enabling Act, Section 45-24-29
(a)(2)(3):
 "It is therefore found that the preparation and implementation of zoning ordinances is necessary to address the findings and needs identified in this section; to protect the public health, safety, and general welfare; to allow the general assembly to carry out its duty to provide for the conservation of the natural resources of the state and to adopt all means necessary and proper by law for the preservation, regeneration, and restoration of the natural environment of the state in accordance with R.I. Const., art. 1, §§ 16 and 17; to promote good planning practice; and to provide for sustainable economic growth in the state.
and in the language of the North Providence Zoning Ordinance:
 "The zoning districts and regulations set forth in this Zoning Ordinance are made in accordance with the provisions of Rhode Island General Law (RIGL) 45-24 and consistent with the Comprehensive Plan of the Town of North Providence, adopted by the Town Council of the Town of North Providence and approved by the Director of the Rhode Island Department of Administration under the provisions of RIGL 45-22.2 and for the following purposes:
 A. To promote public health, safety and general welfare of the Town." See Article I § 101.
Further, plaintiff's prior experiences in dealing with the zoning board made her cognizant of the fact that there was a specific process by which to obtain zoning approval before converting her four-unit dwelling, which is clearly illegal and violative of the Ordinance. As such, plaintiff has not demonstrated that she reasonably relied, to her detriment, on the "status quo" of her present four-unit dwelling.
 Conclusion
After a review of the entire record, this Court finds that the Board's decision is supported by substantial, reliable and probative evidence of record and is not affected by error of law. Substantial rights of the plaintiff have not been prejudiced. Accordingly, the decision of the Board is affirmed.
[1] The Ordinance requirements for granting a variance essentially mirror those outlines in G.L. § 45-24-41.