[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Donald and Diane Champagne (collectively "Defendants") move this Court for partial summary judgment, seeking to strike references to the Rhode Island Housing Maintenance and Occupancy Code, the Rhode Island Residential Landlord and Tenant Act, the Lead Poisoning Prevention Act, and the Rules and Regulations for Lead Poisoning Prevention. Elana Marchakov, Arkadi Marchakov, and Daniel Marchakov (collectively "Plaintiffs") have filed a timely objection thereto. Jurisdiction is pursuant to Rule 56 of Rhode Island Rules of Civil Procedure.
 Facts and Travel
The instant suit was filed by Elana and Arkadi Marchakov on behalf of their son, Daniel Marchakov, for injuries resulting from lead poisoning. Daniel Marchakov had been living in an apartment located at 377 Elm Street, Woonsocket, Rhode Island (the "Property") from July 1997 until October 15, 1998, two months after his initial diagnosis of lead poisoning. Defendants owned the apartment for that entire period. Daniel Marchakov "allegedly" suffered irreversible, neuropsychological impairments. These impairments "allegedly" continue to affect expressive language, fine motor functioning, visuospatial construction, visual attention, auditory attention and visuospatial memory.
On August 25, 1998, during a routine pediatric exam, Daniel Marchakov, at the age of 13 months, was diagnosed with lead poisoning. A blood test revealed that Daniel Marchakov's lead level was 33 ug/dl. A second blood test was administered on September 16, 1998, which indicated an increase in lead level to 63 ug/dl. Daniel Marchakov suffered irreversible, neuropsychological impairments. These impairments continue to affect expressive language, fine motor functioning, visuospatial construction, visual attention, auditory attention and visuospatial memory.
The Rhode Island Department of Health ("RIDH") performed a lead inspection of the Property on September 24, 1998. Having discovered the presence of lead on the Property, RIDH mailed a Notice of Violation to Defendants on October 5, 1998. The Notice ordered Defendants to correct several lead paint hazards present on the Property. On October 14, 1999, RIDH issued a second Notice of Violation to Defendants, based on Defendants' failure to correct the lead paint hazards cited in the initial Notice. Finally, RIDH issued a Notice of Lead-Safe Status to Defendants on October 23, 2001.
 The Applicable Law
Plaintiffs' complaint — relying on the Rhode Island Housing Maintenance and Occupancy Code, the Rhode Island Residential Landlord and Tenant Act, the Lead Poisoning Prevention Act, and the Rules and Regulations for Lead Poisoning Prevention — asserts two claims: negligence and negligent misrepresentation. Defendants assert that the Innocent Owners provision of the Lead Poisoning Prevention Act ("LPPA") shields them from liability under the statute.[1] However, Plaintiffs contend that the innocent owners provision is directed at limiting liability of property owners with respect to penalties imposed by the State, and not with respect to third-parties injured on the premises.
The Court "presume[s] that the [l]egislature intended every word, sentence, or provision to serve some purpose and have some force and effect . . . [the Court] will not interpret a statute in a manner that would defeat the underlying purpose of enactment." Pier House Inn, Inc. v. 421 Corp., Inc.,812 A.2d 799, 804 (R.I. 2002) (citing Dias v. Cinquegrana, 727 A.2d 198,199-200 (R.I. 1999) (per curiam)). Therefore, when interpreting a legislative enactment, it is the Court's duty to "determine and effectuate the [l]egislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987). Included therein is the responsibility of determining the scope and application of a statute. Central to this dispute is the applicability of the LPPA.
The LPPA does not expressly provide a private right of action; rather, its clear language confirms that the LPPA was enacted to protect the public from the health hazards associated with lead paint exposure by establishing "a comprehensive program to reduce exposure to environmental lead." G.L. 1956 (1996 Reenactment) §23-24.6-3. The statute allocates authority to the RIDH to administer lead paint control mechanisms, whereby the RIDH is required to educate the public regarding the dangers of lead paint, to promulgate compliance and enforcement regulations, to establish inspection regulations, and to launch a lead screening and reporting program. § 23-24.6-1, et seq. Furthermore, according to the language of the LPPA, violations are punished via revocation of licenses and/or fines. See §§ 23-24.6-14;23-24.6-15; 23-24.6-27. Therefore, this Court will not infer a private right of action, where the clear language of the LPPA evinces the purpose of the statute to be one of pure governmental administration and enforcement. Accent Store Design, Inc. v.Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996) (stating "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings").
Following the same logic, property owners may not take advantage of portions of the LPPA to shield them of liability for injuries sustained by third-parties. Again, the purpose of the statute is to empower a government agency to promulgate and enforce rules, thereby forcing the hand of property owners to eliminate the presence of lead on property and consequently, eliminate the occurrence of lead poisoning. Again, this statute does not provide remedies for injuries to third-parties, and consequently cannot serve as a shield from third-party claims. Accordingly, this Court finds Defendants may not rely on the statutory language of the LPPA as a defense. Defendants' motion for summary judgment is denied.
Additionally, Plaintiffs' Complaint does not seek to enforce the statutory requirements of the LPPA. Plaintiffs assert two claims: negligence and negligent misrepresentation. Whether the statutes named in the Complaint may be utilized to bring these claims is discussed below.
 Negligence
Our Supreme Court has defined that "[a]n action in negligence is maintained when the plaintiff shows that the defendant breached a duty of care owed to the plaintiff and that this breach proximately caused an injury to the plaintiff resulting in actual damages." Moseley v. Fitzgerald, 773 A.2d 254, 258
(R.I. 2001) (quoting Forte Brothers, Inc. v. NationalAmusements, Inc., 525 A.2d 1301, 1303 (R.I. 1987)). "To establish a cause of action for negligence, a complaint must allege facts demonstrating the defendant's legal duty of care owed to the plaintiff, the defendant's breach of that duty of care, injury to the plaintiff as a result of the breach proximately caused by the defendant's negligent conduct, and damage to the plaintiff." Volpe v. Fleet Nat'l Bank,710 A.2d 661, 663 n. 4 (R.I. 1998) (citing Lutz Engineering Co. v.Industrial Louvers, Inc., 585 A.2d 631, 635 (R.I. 1991)). Accordingly, to establish a cause of action for negligence, a plaintiff is required to establish four elements. Pared down, these elements are duty, breach, causation, and damages.
For over 50 years, our Supreme Court has recognized the admission of a violation of a statute as evidence of negligence.Sitko v. Jastrzebski, 68 R.I. 207, 210, 272 A.2d 178, 179
(1942). In Sitko, the Court stated:
 "where there is the violation of an ordinance that prohibits the doing of a certain act or commands its performance and a person is injured by reason of the very commission or omission of such act, it has been held that the ordinance may be admitted in evidence and its violation proved as evidence of negligence. . . . `Although the violation of the statute or ordinance may not itself be a ground of action, yet, if the violation of the duty imposed for the safety of the public is the cause of the injury, evidence of the violation is prima facie evidence of negligence.'" Id. (citations omitted).
This proposition was later clarified in Clements v. Tashjoin,92 R.I. 308, 313-314, 168 A.2d 472, 474 (1961), where the Rhode Island Supreme Court stated:
 "[t]his court long ago declared that the violation of a statute or an ordinance was not of itself ground for a civil action unless such right was annexed thereto, . . . or unless it prescribed a duty for the benefit of a particular class of persons. . . . And some years later . . ., it was expressly held that if the duty imposed by the statute was for the safety of the public, violation of it would be prima facie evidence of negligence but not negligence per se. . . . [W]hile we . . . recognized that violation of the law was evidence of negligence, we required the plaintiff to prove that the violation was the direct and proximate cause of the injury and not merely a condition or circumstance which furnished the occasion therefor." Clements v. Tashjoin, 92 R.I. at 313-314, 168 A.2d at 474 (citations omitted).
Collectively, the case law supports the proposition that a violation of a statute, which itself creates a duty to the public, may be relied on by a plaintiff as evidence of the existence of a duty and the breach of that duty.
Accordingly, in the instant case, the Rhode Island Housing Maintenance and Occupancy Code, the Rhode Island Residential Landlord and Tenant Act, the Lead Poisoning Prevention Act, and the Rules and Regulations for Lead Poisoning Prevention were enacted to protect the public from the health risks associated with lead paint exposure. See G.L. 1956 (1996 Reenactment) §§23-24.6-2 and 23-24.6-3.[2] Therefore, Plaintiffs may rely on violations of these statutes as evidence of Defendants' negligence, although Plaintiffs necessarily also must establish causation and damages to prevail on their claims. SeeClements, 92 R.I. at 313-314, 168 A.2d at 475.
 Negligent Misrepresentation
It is well-settled that
 "in order to establish a prima facie case of negligent misrepresentation, the plaintiff must establish the following elements: `(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.'" Mallette v. Children's Friend Serv., 661 A.2d 67, 69-70 (R.I. 1995) (citations omitted).
As in any negligence action, a duty between the parties must exist in order for the claimant to prevail. See Restatement
(Second) of the Law of Torts § 304 comment a. (stating negligent misrepresentation is included in the catalogue of negligent conduct). Generally, non-disclosure does not give rise to a claim of negligent misrepresentation. See Binette v. Dyer LibraryAss'n, 688 A.2d 898, 903, 1996 Me. LEXIS 246 (Me. 1996) (stating "not every failure to disclose constitutes a misrepresentation");see also Northern Assocs. v. Kiley, 1998 Mass. Super. LEXIS 342 (stating "absent a fiduciary duty, mere non-disclosure is not ordinarily actionable as deceit or negligent misrepresentation in the absence of `some affirmative act of concealment'"). However, failure to disclose may rise to the level of breach of a duty, where a statute imposes an affirmative duty to disclose. SeeBinnette, 688 A.2d at 903 (stating "silence rises to the level of supplying false information when such failure to disclose constitutes the breach of a statutory duty").
Section 23-24.6-16(a) requires owners of rental property to disclose certain information regarding lead paint to their tenants. Specifically, § 23-24.6-16(a) states in pertinent part:
 "[t]he department shall issue regulations for the disclosure of lead exposure hazards and potential lead exposure hazards in a residential dwelling, dwelling unit, or premise that is offered for sale or lease. These regulations . . . shall additionally require an owner of a residential dwelling, dwelling unit, or premise offered for . . . lease to provide . . . copies of educational materials developed by the department, including information about the requirements of this section and programs that provide financial assistance for comprehensive environmental lead inspections or lead hazard reduction."
According to the clear language of the statute, owners have the affirmative duty to provide information regarding lead paint to their tenants. Therefore, Plaintiffs, in the instant case, may rely on the above-named statute to establish a duty to disclose and failure to comply with that statute as breach of that duty.
 Conclusion
For the foregoing reasons, Defendants' motion for summary judgment is denied. Defendants may not use the innocent owners provision of the Lead Poisoning Prevention Act to shield themselves from liability resulting from injuries sustained by a tenant. Furthermore, Plaintiffs may rely on the above-mentioned statutes as evidence of common law negligence and negligent misrepresentation.
Counsel shall present the appropriate judgment for entry.
[1] A question is raised in Plaintiffs' brief as to the law applicable to the instant case with regard to the innocent owners provision. Plaintiffs cite "R.I.G.L. § 23-24.6-17(b)" and Defendants cite "§ 23-24.6-17(2), which was passed by the General Assembly in 1991." (See Plaintiff's Memorandum at p. 4). The applicable law in the instant case is G.L. 1956 (1996 Reenactment) § 23-24.6-17(2), in which the subsections — enacted on June 18, 1991, pursuant to P.L. 1991 ch. 355, § 3 — were redesignated pursuant to P.L. 1996, ch. 404, § 1. The redesignation became effective on August 9, 1996. In any event, these distinctions are inconsequential, as the substance and pertinent language cited by each party is identical. Roland Whytock Co., Inc. v. Wilson, 553 A.2d 1069, 1070 (R.I. 1989) (stating "[i]n all relevant aspects, the laws cited are identical" and ruling on the merits). Nevertheless, for purposes of exactitude, this Court will rely on the language as it appears in G.L. 1956 (1996 Reenactment) § 23-24.6-17(2).
[2] Sections 23-24.6-2 and 23-24.6-3 state:
 "§ 23-24.6-2. Legislative findings. — The general assembly finds, upon the report of the environmental lead task force, and the reports, hearings, and records of its own committees and of federal agencies including the environmental protection agency and centers for disease control, that:
 (1) Environmental exposures to even low levels of lead increase a child's risks of developing permanent learning disabilities, reduced concentration and attentiveness and behavior problems, problems which may persist and adversely affect the child's chances for success in school and life.
 (2) Childhood lead poisoning is caused by environmental exposure to lead. The most significant sources of environmental lead are lead based paint in older housing and house dust and soil contaminated by this paint.
 (3) Childhood lead poisoning is completely preventable.
 (4) Rhode Island does not currently have a comprehensive strategy in place for preventing childhood lead poisoning. As a result, tens of thousands of Rhode Island's children are poisoned by lead at levels believed to be harmful, with most of these poisoned children going undiagnosed and untreated.
 (5) Childhood lead poisoning is dangerous to the public health, safety, and general welfare of the people and necessitates excessive and disproportionate expenditure of public funds for health care and special education, causing a drain upon public revenue.
 (6) The enactment and enforcement of this chapter is essential to the public interest. It is intended that the provisions of this chapter be liberally construed to effectuate its purposes.
 (7) The magnitude of the childhood lead poisoning in Rhode Island's older homes and urban areas is a result of approved use of lead based materials over such an extended period in public buildings and systems as well as private housing that a comprehensive approach is necessary to alleviate the cause, identify and treat the children, rehabilitate the affected housing where young children reside, and dispose of the hazardous material. Rhode Island presently does not have the public nor the private resources to handle the total problem, requiring prioritizing on a need basis.
 § 23-24.6-3. Declaration of purpose. — The purpose of this chapter is to protect the public health and public interest by establishing a comprehensive program to reduce exposure to environmental lead and prevent childhood lead poisoning, the most severe environmental health problem in Rhode Island The goal of this chapter is to reduce the incidence of childhood lead poisoning in Rhode Island to the greatest extent feasible by the year 2000.