[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Paul and Beatrice Guy (collectively "Defendants") move this Court for summary judgment, asserting that they are protected from liability under the "Innocent Owner" provision, R.I.G.L. § 23-24.6-17(2) and, in the alternative, that the Plaintiffs should be prevented from using Notices of Violation as evidence of Defendants' negligence. Brenda Sanchez, Alfredo Sanchez, and Jennifer Sanchez (collectively "Plaintiffs") have filed a timely objection thereto. Jurisdiction is pursuant to Rule 56 of Rhode Island Rules of Civil Procedure.
 FACTS AND TRAVEL
The instant action was filed by Brenda and Alfredo Sanchez on behalf of their daughter, Jennifer Sanchez, for injuries resulting from lead poisoning. Jennifer Sanchez had been living in an apartment owned by Defendants located at 61 Elm Street, Woonsocket, Rhode Island from February 1996 until October 1996.
On June 17, 1996, Jennifer Sanchez was diagnosed with lead poisoning with a blood level of 43 ug/dl. As a result of her lead poisoning, Jennifer is allegedly suffering permanent neuropsychological impairments and, according to Plaintiff's expert, Dr. John Rosen, is also at a high risk for developing various medical consequences of lead poisoning in the future.
In August 1996, the Rhode Island Department of Health conducted an inspection of the apartment at 61 Elm Street. The Department's report established the existence of lead paint in the unit, and the presence of numerous and significant lead paint hazards. The Department of Health issued a Notice of Violation to Defendants on October 2, 1996, ordering them to respond to the notice and to correct the lead hazards. A Second Notice of Violation was sent to them on December 18, 1996, for violations that they did not correct. On January 31, 1997, the Department of Health referred the Defendants' case to the City of Woonsocket's Senior Housing Inspector for enforcement of the housing code based on the Defendants' failure to abate the lead hazards identified in 1996.
 THE APPLICABLE LAW
Plaintiff's complaint — relying on the Rhode Island Housing Maintenance and Occupancy Code, the Rhode Island Residential Landlord and Tenant Act, the Lead Poisoning Prevention Act, and the Rules and Regulations for Lead Poisoning Prevention — asserts a negligence claim. In response, Defendants contend that the Innocent Owners provision of the Lead Poisoning Prevention Act ("LPPA") shields them from liability under the statute and they should therefore be granted summary judgment.
The Court "presume[s] that the [l]egislature intended every word, sentence, or provision to serve some purpose and have some force and effect . . . [the Court] will not interpret a statute in a manner that would defeat the underlying purpose of enactment." Pier House Inn, Inc.v. 421 Corp., Inc., 812 A.2d 799, 804 (R.I. 2002) (citing Dias v.Cinquegrana, 727 A.2d 198, 199-200 (R.I. 1999) (per curiam)). Therefore, when interpreting a legislative enactment, it is the Court's duty to "determine and effectuate the [l]egislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987). Included therein is the responsibility of determining the scope and application of a statute. In the instant case, this Court must determine the scope of the "Innocent Owner" provision of the LPPA.
The "Innocent Owner" provision of the LPPA, states as follows:
 "The owner of any dwelling, dwelling unit or premises shall be considered as an "innocent owner" and liability as to lead poisoning is limited to the reduction of any lead hazard as determined by a comprehensive environmental lead inspection within the requirements of chapter 24.3 of title 45 of the general laws (housing maintenance and occupancy code). The "innocent owner" provision will cease upon the owner's unreasonable failure to correct any lead paint violation within ninety (90) days of notice as provided in said chapter. Providing, however, any owner who has received notices on three (3) or more properties shall be presumed to be an unreasonable failure to correct." § 23-24.6-17(6)(b).
In Marchakov v. Champagne, 2004 R.I. Super. LEXIS 125, C.A. No. 00-1861, decided by the Court earlier this year, this Court found that the above provision does not shield property owners from third-party negligence claims because the "Innocent Owner" provision is directed at limiting the liability of property owners with respect to penalties imposed by the state. Looking to the plain language of the statute, this Court concluded that LPPA was enacted to protect the public from the health hazards associated with lead paint exposure, and does not apply to third party actions.
This Court's interpretation concerning the scope of the "Innocent Owner" provision is consistent with the succeeding paragraph in §23-24.6-17, which states as follows:
 "The owner of any dwelling, dwelling unit, or premises who fails to provide for lead hazard reduction as required by department regulations shall be issued a notice of violation by the director in the manner provided by chapter 24.3 of title 45 of the general laws entitled "The Housing Maintenance and Occupancy Code." In addition to any other enforcement agency granted under this chapter, the department shall have the authority to utilize pertinent provisions of said code in enforcing this section in the same manner as an enforcing officer under the code, including but not limited to the provisions of §§ 45-24.3-17 through 45-24.3-21, inclusive, except that the director or his or her designee may provide a reasonable time up to ninety (90) days for the correction of any violation alleged, and provided further, except where there exists a hardship as to financing the lead reduction, or where material, personnel, or weather delays the reduction completion." § 23-24.17(6)(c).
The aforementioned paragraph of § 23-24.6-17 relates to the enforcement power available to the Department of Health when a property owner fails to remediate identified hazards within an appropriate time. Sections45-24.3-17 through 45-24.3-21 refer to the provision in the Housing Maintenance and Occupancy Code that allows an enforcing officer or agency to assess fines, seek criminal penalties, perform repairs, designate a dwelling unfit or actually seize and demolish a property. Reading these sections of the statute together, this Court finds that the "Innocent Owner" provision concerns property owners' rights with regard to state enforcement authority and does not pertain to thirdparty negligence claims. This Court will not infer a private cause of action, where the clear language of the LPPA evinces the purpose of the statute to be one of pure governmental administration and enforcement. Accent StoreDesign, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996) (stating "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings"). Accordingly, this Court finds that the "Innocent Owner" provision of the LPPA does not shield Defendants from potential liability, for the injuries sustained by Jennifer Sanchez.
Additionally, even if the "Innocent Owner" provision of the LPPA were applicable in a third party negligence action, the Defendants, in the instant case, did not correct the violation within the statute's 90 day safe harbor. Section 23-24.6-17(6)(b) provides that "[t]he innocent owner" provision will cease upon the owner's unreasonable failure to correct any lead paint violation within ninety (90) days of notice as provided in said chapter, "except where there exists a hardship as to financing the lead reduction, or where material, personnel, or weather delays the reduction completion." Here it was more than one year from the date of the original Notice of Violation that the Defendants completely remedied all of the lead hazards at the subject property. Moreover, Defendants have not alleged any hardship that would excuse their failure to act in accordance with the 90 day time limit set forth in the statute. Thus, even assuming, arguendo that LPPA did apply to third party claims, Defendants in the present case would not be entitled to summary judgment based on the "Innocent Owners" provision.
 NEGLIGENCE
Our Supreme Court has defined that "[a]n action in negligence is maintained when the plaintiff shows that the defendant breached a duty of care owed to the plaintiff and that this breach proximately caused an injury to the plaintiff resulting in actual damages." Moseley v.Fitzgerald, 773 A.2d 254, 258 (R.I. 2001) (quoting Forte Brothers, Inc.v. National Amusements, Inc., 525 A.2d 1301, 1303 (R.I. 1987)). "To establish a cause of action for negligence, a complaint must allege facts demonstrating the defendant's legal duty of care owed to the plaintiff, the defendant's breach of that duty of care, injury to the plaintiff as a result of the breach proximately caused by the defendant's negligence conduct, and damage to the plaintiff." Volpe v. Fleet Nat'l Bank,710 A.2d 661, 663 n. 4 (R.I. 1998) (citing Lutz Engineering Co. v.Industrial Louvers, Inc., 585 A.2d 631, 635 (R.I. 1991)). Accordingly, to establish a cause of action for negligence, a plaintiff is required to establish four elements. Pared down, these elements are duty, breach, causation, and damages.
For over 50 years, our Supreme Court has recognized the admission of a violation of a statute as evidence of negligence. Sitko v. Jastrzebski,68 R.I. 207, 210, 272 A.2d 178, 179 (1942). In Sitko, the Court stated:
 "where there is the violation of an ordinance that prohibits the doing of certain act or commands its performance and a person is injured by reason of the very commission or omission of such act, it has been held that the ordinance may be admitted in evidence and its violation proved as evidence of negligence. . . . `Although the violation of the statute or ordinance may not itself be a ground of action, yet, if the violation of the duty imposed for the safety of the public is the cause of the injury, evidence of the violation is prima facie evidence of negligence.'" Id. (citations omitted).
This proposition was later clarified in Clements v. Tashjoin, 92 R.I. 308,313-14, 168 A.2d 472, 474 (1961), where the Rhode Island Supreme Court stated:
 "[t]his court long ago declared that the violation of a statute or an ordinance was not of itself ground for a civil action unless such right was annexed thereto, . . . or unless it prescribed a duty for the benefit of a particular class of persons. . . . And some years later . . ., it was expressly held that if the duty imposed by the statute was for the safety of the public, violation of it would be prima facie evidence of negligence but not negligence per se. . . . [W]hile we . . . recognized that violation of the law was evidence of negligence, we required the plaintiff to prove that the violation was the direct and proximate cause of the injury and not merely a condition or circumstance which furnished the occasion therefore." Clements v. Tashjoin, 92 R.I. at 313-14, 168 A.2d at 474
(citations omitted).
Collectively, the case law supports the proposition that a violation of a statute, which itself creates a duty to the public, may be relied on by a plaintiff as evidence of the existence of a duty and the breach of that duty.
Accordingly, in the instant case, the Rhode Island Housing Maintenance and Occupancy Code, the Rhode Island Residential Landlord and Tenant Act, the Lead Poisoning Prevention Act, and the Rules and Regulations for Lead Poisoning Prevention were enacted to protect the public from the health risks associated with lead paint exposure. See G.L. 1956 (1996 Reenactment) §§ 23-24.6-2 and 23-24.6-3.[1] Therefore, Plaintiffs may rely on notices of violations of these statutes as evidence of Defendants' negligence, although Plaintiffs necessarily also must establish causation and damages to prevail on their claims. SeeClements, 92 R.I. at 313-14, 168 A.2d at 475.
 CONCLUSION
For the foregoing reasons, Defendants' motion for summary judgment is denied. Defendants may not use the "Innocent Owners" provision of the Lead Poisoning Prevention Act to shield themselves from liability resulting from injuries sustained by a tenant. Furthermore, Plaintiffs may rely on violations of the above-mentioned statutes as evidence of common law negligence.
Counsel shall present the appropriate judgment for entry.
[1] Sections 23-24.6-2 and 23-24.6-3 state:
"§ 23-24.6-2. Legislative findings. — The general assembly finds, upon the report of the environmental task force, and the reports, hearings, and records of its own committee and of federal agencies including the environmental protection agency and centers for disease control, that:
(1) Environmental exposures to even low levels of lead increase a child's risk of developing permanent learning disabilities, reduced concentration and attentiveness and behavior problems, problems which may persist and adversely affect the child's chances for success in school and life.
(2) Childhood lead poisoning is caused by environmental exposure to lead. The most significant sources pf environmental lead are lead based on paint in older housing and house dust and soil contaminated by this paint.
(3) Childhood lead poisoning is completely preventable.
(4) Rhode Island does not currently have a comprehensive strategy in place for preventing childhood lead poisoning. As a result, tens of thousands of Rhode Island's children are poisoned by lead at levels believed to be harmful, with most of these poisoned children going undiagnosed and untreated.
(5) Childhood lead poisoning is dangerous to the public health, safety, and general welfare of the people and necessitates excessive and disproportionate expenditure of public funds for health care and special education, causing a drain upon public revenue.
(6) The enactment and enforcement of this chapter is essential to the public interest. It is intended that the provisions of this chapter be liberally construed to effectuate its purposes.
(7) The magnitude of the childhood lead poisoning in Rhode Island's older homes and urban areas is a result of approved use of lead based materials over such an extended period in public buildings and systems and private housing that a comprehensive approach is necessary to alleviate the cause, identify and treat the children, rehabilitate the affected housing where young children reside, and dispose of the hazardous material. Rhode Island presently does not have the public or the private resources to handle the total problem, requiring prioritizing on a need basis.
§ 23-24.6-3. Declaration of purpose. — The purpose of this chapter is to protect the public health and public interest by establishing a comprehensive program to reduce exposure to environmental lead and prevent childhood lead poisoning, the most severe environmental health problem in Rhode Island. The goal of this chapter is to reduce the incidence of childhood lead poisoning in Rhode Island to the greatest extent feasible by the year 2000.